IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,   ] | |
| ] | CRIMINAL CASE NO. |
| Plaintiff,   ] | |
| ] | 1:10-CR-00456-REB |
| v   ] | |
| ] | |
| LOUIS CONSTANTINE HAMPERS,   ] | |
| ] | |
| Defendant.   ] | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE
OR VARIANCE PURSUANT TO 18 U.S.C. §3553**

Comes Now, Defendant Louis C. Hampers, by and through counsel and files this Reply to the Government's Response to Defendant's Motion for Downward Departure or Variance Pursuant to 18 U.S.C. §3553 and shows as follows:

### GUIDELINE PROVISIONS

The government opposes the defense request for a downward departure and contends that Section U.S.S.G. § 5K2.13 prohibits a downward departure in this case. The defense submits that the government analyzed the present case pursuant to the incorrect guideline section.

The defense's request for a downward departure is based on Dr. Hampers' dual

1

diagnosis: a mental condition and drug dependance. This diagnosis is specific as to Dr. Hampers and should be analyzed pursuant to Chapter Five - Part H: "Specific Offender Characteristics." Part H addresses the relevance of certain specific offender characteristics in sentencing. Therefore, Dr. Hampers' specific characteristics such as his mental condition and addictive issues should be considered pursuant to Sections 5H1.3 and 5H1.4.

However, the government contends that §5K2.13 (Diminished Capacity), in pertinent part, prohibits a downward departure if the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants. This section is inapposite. Section 5K2.13 does not address specific offender characteristics; rather, it addresses certain conduct which may have occurred during the criminal act. An example of the prohibition in §5K2.13 of a downward departure would be if the defendant became intoxicated and robbed a bank. The court would not be authorized to downwardly depart from the guideline range based on a defense contention that the defendant suffered from a diminished capacity because he was intoxicated when he committed the crime of bank robbery.

That is not the case with Dr. Hampers. Dr. Hampers has a dual diagnosis: a mental condition and drug dependance. The mental condition, not any assertion of diminished capacity, forms the basis for a downward departure pursuant to Section

5H1.3 (mental and emotional conditions).

As fully described in the defense's downward departure motion, in 2010 the Commission enlarged the role of certain offender characteristics in determining whether a departure is warranted. It is Dr. Hampers' mental condition **combined** with his drug dependance which distinguishes his case from the more typical cases. It is the mental condition, coupled with the addiction, that forms the basis for a Section 5H1.3 departure.

The 2010 amendments to both Sections 5H1.3 and 5H1.4 references §5C1.1 Application Note 6.

Application Note 6 permits a downward departure when the Court finds:

> "(A) the defendant is an abuser of narcotics, other controlled substances, or alcohol, or suffers from a significant mental illness, and (B) the defendant's criminality is related to the treatment problem to be addressed...."

U.S.S.G. § 5C1.1, Note 6.

Because of Dr. Hampers' mental condition and his drug addiction, he satisfies the first condition. Additionally, his criminal conduct is directly related to the treatment problem which would be satisfied by implementing Dr. Ritvo's recommendation.

Application Note 6 further provides:

> "In determining whether such a departure is appropriate, the court should consider, among other things, (1) the likelihood that completion of the treatment program will

successfully address the treatment problem, thereby reducing the risk to the public from further crimes of the defendant, and (2) whether imposition of less imprisonment than required by Zone C will increase the risk to the public from further crimes of the defendant."

U.S.S.G. § 5C1.1, Note 6.

As detailed in Dr. Ritvo's letter to the Court and his statement in the defense video, Dr. Ritvo believes that with adherence to the proposed comprehensive treatment program Dr. Hampers' prognosis is excellent and his potential for relapse to drug use is extremely low as are his risk to the community and danger to others.

Finally, any contention that §5C1.1, Application Note 6 is relevant only to supervised release is incorrect. The clear reading of Application Note 6, as amended in Amendment 738, effective November, 2010, addresses a downward departure. The example to Application Note 6 explains:

> "Example: the following examples both assume the applicable guideline range is 12-18 months and the court departs in accordance with this application note. Under Zone C rules, the defendant must be sentenced to at least six months imprisonment. (1) the defendant is a nonviolent drug offender in Criminal History Category I and probation is not prohibited by statute. The court departs downward to impose a sentence of probation, with twelve months of intermittent confinement, community confinement, or home detention and participation in a substance abuse treatment program as conditions of probation."

As in the example, Dr. Hampers' guideline range is 12-18 months. As stated above, the defense submits that a downward departure and the utilization of

Application Note 6 is appropriate.

## ADDICTION AND DETERRENCE ANALYSIS

The government does not dispute the training and experience of Dr. Gundersen and Ms. DeVonna Anthony relating to the issue of addiction, yet asserts that there are inconsistencies in some of their conclusions which have been presented to the Court. The government is incorrect, there are no inconsistent conclusions. Both Dr. Gundersen and Ms. Anthony conclude that a prison sentence would not deter other physicians with addiction problems from unlawfully obtaining drugs to feed their addiction. It is important to note that the opinions of Dr. Gundersen and Ms. Anthony are not based on the facts of this particular case but are drawn from their immense experience and unique perspectives in physician addiction treatment.

As the Medical Director of CPHP, Dr. Gundersen has knowledge of approximately 3,600 physician treatment cases in Colorado alone. Additionally, she has access to national data information with other physician health programs throughout the nation which includes cases involving tens of thousands of physicians. Ms. Anthony has provided counseling to Colorado physicians since 1987. Dr. Gundersen and Ms. Anthony are uniquely qualified to discuss what motivates or deters physicians with addiction issues. Their conclusions regarding

5

physicians in active addictions are based on their knowledge of thousands of cases and their understanding of a physician's behavior with addiction issues.

Their understanding of the complex nature of physician addiction is the basis for their opinions. The government notes, based on the assertion of Dr. Gundersen and Ms. Anthony, that it appears that the problem of addicted physicians is already underground and opines that "...perhaps the empirical lack of incarceration from prior prosecutions has contributed to a current lack of deterrent effect." (Govt. Response p.5) The government missed the point which Dr. Gundersen makes. Her conclusion, based on her experience, is that a highly publicized prison sentence would make it less likely that a physician with addiction problems would seek professional help fearing that he or she may be the next newspaper headline and become an incarcerated physician.

Nor is their conclusion at odds with their statements that the number of pills in this case is not unusual. The probation report sought to differentiate Dr. Hampers' case from other similar physician prosecutions by asserting that the number of pills in this case is unique. This is simply not correct. Based on their knowledge of hundreds, if not thousands, of physicians' addiction cases, Dr. Gundersen and Ms. Anthony conclude that the number of pills in Dr. Hampers' case is not unusual. Ms. Anthony's observation regarding The Colorado Prescription Drug Monitoring

Program (PDMP) is accurate. The Colorado Prescription Drug Monitoring Program (PDMP) was begun in 2007. It provides that pharmacists electronically file filled prescriptions so that the electronic data base can determine if patients are receiving controlled substances from more than one physician in order to detect abuse. The system can also electronically identify all prescriptions written by a particular physician. This is how the exact number of Dr. Hampers' prescription abuse was detected. Ms. Anthony correctly observed that prior to the implementation of PDMP the extent of a physicians prescription abuse was impossible to detect. The number of pills in the instant case can not be fairly compared to cases made prior to PDMP.

Dr. Gundersen and Ms. Anthony's statements about deterrence and the number of pills not being unusual are not inconsistent as claimed by the government.

Further, the government contends that Dr. Gundersen's opinions concerning the power of addiction and her observations "that the work place tends to be the last place affected by physician's addictive behavior" are inconsistent and defy logic.

The power of addiction is well established and can not seriously be contested by the government. It has never been contended that an addicted physician must compulsively take the addictive drug twenty-four hours per day. Both Dr. Gundersen and Ms. Anthony concur that during the period of active addiction, the concern about the pain of withdrawal drives the addiction. Dr. Gundersen bases her statements on

an analysis of thousands of cases wherein she has observed addicted physicians having sufficient control over their conduct to ensure that the work place is the last area of their lives affected by their addiction. In fact, it is Dr. Gundersen's opinion that within the work place, the very last area to be affected is patient care.[1]

## PUBLIC PROTECTION

The government asserts that its greatest concern is public safety and states that Dr. Hampers "...admits to abusing pills while working at the emergency department of Children's Hospital." (Id. P. 7). Dr. Hampers has never stated that he was abusing pills while he was actually working in the emergency department treating patients. Dr. Hampers' position at Children's Hospital and the University of Colorado required a sixty hour work week commitment. Of that work week, approximately 80% of his time was dedicated to administrative duties, teaching and research. Only approximately 20% of his time involved direct patient care. The emergency department shifts were only eight hours long. Some weeks Dr. Hampers worked only one shift and other weeks he worked two shifts. As a result, despite his physical dependence on opiates, he was able to abstain during these relatively short periods

---

[1] Undersigned counsel has read the relevant portions of the government's response to Dr. Gundersen and Ms. Anthony, as well as the factual assertions contained in this reply. Both Dr. Gundersen and Ms. Anthony specifically authorize the contents of this reply which attributes statements and opinions to them.

treating patients. There has never been any evidence that Dr. Hampers' addiction compromised patient care in any way. In fact, Children's Hospital, through its representative, reports that no patient had his or her health compromised as a result of Dr. Hampers' substance abuse while at the hospital. The Children's Hospital representative observed that although Dr. Hampers had difficulty with the hospital staff, he was able to control his behavior around patients. (PSIR, paragraph 31). Dr. Hampers' capacity to provide safe patient care, despite advanced stages of addiction, is entirely consistent with the observations and experience of Dr. Gundersen and Ms. Anthony regarding other addicted physicians.

The government asserts that the fact that there was no harm to any patients at Children's Hospital is a credit to the physicians and staff — not the defendant and that the hospital had safety mechanisms in place to prevent Dr. Hampers' criminal acts from compromising patient care. The government fails to mention that, as Medical Director of the Department, Dr. Hampers was largely responsible for those safety mechanisms.

Furthermore, the government does not even address Dr. Ritvo's conclusions about the potential of danger to the community. Dr. Ritvo has met with Dr. Hampers and reviewed his voluminous medical records. As detailed in his November 7, 2011 letter to the Court, Dr. Ritvo finds that Dr. Hampers has a dual diagnosis: a mental

condition and drug dependence (addiction). Yet, Dr. Ritvo believes that with adherence to the proposed comprehensive treatment program, Dr. Hampers' prognosis is excellent and his potential for relapse to drug use is extremely low as are his risk to the community and danger to others. Dr. Ritvo's conclusions are in sharp contrast to the government's view. A sentence consistent with adherence to Dr. Ritvo's proposed comprehensive treatment would greatly **lower** any potential risk to the public by **maximizing** the probability of Dr. Hampers' successful recovery.

## § 3553 FACTORS

The government concedes, as it must, that Dr. Hampers had made extraordinarily positive contributions to society during his career. The government contends that although Dr. Hampers has undoubtedly saved lives, he has also risked them. As stated above, there is no evidence to support such an assertion. None.

As stated in the defense objections to the PSIR and its motion for a downward departure or downward variance, the defense's extensive analysis of the DEA summary of prosecutions of doctors strongly supports a conclusion that a non-custodial sentence of probation or home confinement is warranted.

Finally, a component of the Section 3553 analysis is the need for the sentence imposed to provide the defendant with the needed educational vocational training, medical care, or other correctional treatment in the most effective manner. Section

3553 (a)(1)(D). As Dr. Ritvo observes, Dr. Hampers is receiving the best medical treatment available and the continued utilization of this treatment team would maximize his recovery efforts.

## CONCLUSION

For the above stated reasons, the defense requests a sentence of probation with the strict conditions advocated by Dr. Ritvo.

Respectfully submitted this 13th day of February, 2012.

S/Craig A. Gillen
Georgia Bar No. 294838
Gillen Withers & Lake LLC
3490 Piedmont Road Ne
Suite 1050
Atlanta, GA 30305
cgillen@gwllawfirm.com

Pursuant to Title 28 U.S.C. § 1746, I do hereby declare that the above-stated facts are true and correct to the best of my knowledge and belief.

This 13th day of February, 2012.

S/Craig A. Gillen
Craig A. Gillen